IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCOTT A. McCUNE,

     Plaintiff,

vs.           Case No. 13-1207-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

     Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On May 4, 2012, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 9-23). Plaintiff alleges that he had been disabled since January 1, 2005 (R. at 9). Plaintiff meets the insured status requirements for social security disability benefits through June 30, 2010 (R. at 11).

4

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 11). At step two, the ALJ found that plaintiff had the following severe impairments: schizophrenia (paranoid type), attention deficit hyperactivity disorder (ADHD), impulse control disorder, and substance abuse (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff has no past relevant work (R. at 21). At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err in her consideration of the opinions of Dr. Lear, plaintiff's treating psychiatrist?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  <u>Robinson</u>, 366 F.3d at 1084.

    A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v.

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

Plaintiff received mental health treatment at COMCARE between February 24, 2009 and February 28, 2012.  She was seen by LMSW Compton, ARNP Born, ARNP Harris, ARNP Koehn, Dr. Lear, LSCSW Belt-Newton, LMSW Mills and Philip Crayton, a substance abuse counselor (R. at 463-505, 555-574, 595-601, 618-628).  Dr. Lear saw plaintiff himself on April 7, 2010, September 1, 2010 and February 21, 2012 (R. at 569-572, 596-598, 621-624).  Dr.

Lear is a psychiatrist and the medical director of COMCARE (R. at 613). On October 6, 2011, Dr. Lear made the following statement:

> Mr. McCune suffers from distorted reality, hears voices chronically even at his best. They are sometimes condemning, and they sometimes direct him to do bad things. He has severe difficulty completing tasks because of his deficits in attention and focus. He is easily distracted. He is also chronically angry, has angry outbursts, and blows up at times. <u>He was kicked out of the Safe Haven homeless shelter because of his mood swings and anger</u>. He has frequently lived out of his car. <u>His impulse control deficits contributed to the incident when he stole a can of tuna fish and beat up a store employee</u>.
>
> His symptoms include delusions and hallucinations, blunt affect, and emotional withdrawal and isolation. He does have marked difficulties with activities of daily living; extreme difficulties with social functioning and maintaining concentration, persistence, and pace; and he has repeated episodes of decompensation, each of extended duration.

(R. at 613-614, emphasis added).

Dr. Lear completed a mental RFC assessment in which he found plaintiff markedly impaired in 16 categories and moderately limited in 4 categories (R. at 615-616). Dr. Lear further stated:

> It is my opinion that Mr. McCune has been functioning as I have described at least since he first came to COMCARE. Such a condition would not, of course, have sprung

8

> forth on the day of his first appointment at COMCARE.
>
> The opinions expressed here are based both on my treatment notes, and my specific recollections and observations, and the treatment records of others here at COMCARE. It would not be possible, and I do not attempt to document everything in my treatment notes.

(R. at 616-617).

The ALJ for a number of reasons gave "very little weight" to this opinion (R. at 20-21). The court will examine many of those reasons for giving very little weight to the opinions of Dr. Lear.

The ALJ stated that "Dr. Lear's recitation of the claimant's symptoms appears to rely heavily on the claimant's self-report and subjective complaints, despite the suspect nature of these claims" (R. at 20). In the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." <u>Id</u>. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory

9

> medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints. However, the ALJ did not cite to either a legal or evidentiary basis for his assertion that the opinions of Dr. Lear were based solely or primarily on plaintiff's subjective complaints. In fact, Dr. Lear stated that his opinions were based on his treatment notes and his specific recollections and observations, and the treatment records of others at COMCARE (R. at 617). The treatment records indicate that plaintiff was seen on 13 occasions at COMCARE between February 2009 and September 2010 (R. at 463-505, 555-574, 595-601). Dr. Lear relied on the fact that plaintiff was kicked out of a homeless shelter because of his mood swings and anger, and an incident in which he stole a can of tuna fish and beat up a store employee (R. at 613). The COMCARE records also show plaintiff on probation for domestic violence and assault (R. at 557, 569). COMCARE records from September 3, 2010 note that plaintiff was kicked out of the homeless shelter because of an altercation with another resident (R. at 599).

Furthermore, the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. Thomas v. Barnhart, 147 Fed. Appx. 755, 759-760 (10th Cir. Sept. 2, 2005); Miranda v. Barnhart, 205 Fed. Appx.

11

638, 641 (10th Cir. Aug. 11, 2005).  A psychological opinion may rest either on observed signs and symptoms or on psychological tests.  Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  The ALJ cannot reject a psychologist's opinion solely for the reason that it was based on a claimant's responses because such rejection impermissibly substitutes the ALJ's judgment for that of the psychologist.  Thomas, 147 Fed. Appx. at 760; Miranda, 205 Fed. Appx. at 641.

Second, the ALJ asserted that Dr. Lear did not examine plaintiff between April 2010 and February 2012, and thus had very little opportunity for the "recollections and observations" referred to in his opinion (R. at 20).  However, Dr. Lear saw plaintiff on September 1, 2010.  He found plaintiff's attention and concentration were impaired (R. at 596-598).  Plaintiff was also seen at COMCARE on September 3, 2010 in which plaintiff reported he was kicked out of the homeless shelter because of an altercation with another resident (R. at 599-600).

Third, the ALJ states that Dr. Lear makes no explanation for his findings that plaintiff had marked difficulties with activities of daily living, extreme difficulties with social functioning and maintaining concentration, persistence and pace, and repeated episodes of decompensation.  The ALJ asserts that he offers no explanation for these conclusions, and further

12

asserts that there is no evidence of "any" episodes of decompensation (R. at 20). However, the COMCARE records and the report from Dr. Lear note he was on probation for domestic violence and assault, that he was kicked out of the homeless shelter due to an altercation, and stole a can of tuna fish and beat up a store employee. When plaintiff was kicked out of the homeless shelter, he went to his mother's home, but she became upset and called to request assistance; plaintiff ended up going to a friend's house (R. at 599-600). Claimant reported that he is homeless and has burned a lot of bridges because he is hard to live with because of his mental illness (R. at 599). Impaired, limited, only fair, or fair to poor attention and concentration were noted in numerous treatment records from 2007-2012 (R. at 403, 465, 478 482, 487, 491, 495, 500 570, 596, 622).[1] The COMCARE records and Dr. Lear's report clearly document difficulties with social functioning; concentration, persistence and pace; and episodes of decompensation. Substantial evidence does not support the ALJ's finding that there is no explanation for Dr. Lear's conclusions and that there is no evidence of decompensation.

Fourth, the ALJ asserts that the "marked" limitations found by Dr. Lear on the mental RFC assessment do not agree with the

---

[1] At one point, the ALJ stated that nothing was indicated to support Dr. Lear's finding of impaired attention and concentration on April 7, 2010 (R. at 19, 570) . However, the medical record shows repeated instances of such findings by numerous treatment providers.

13

"extreme" limitations previously found by Dr. Lear (R. at 20). This argument is without merit. The PRTF form is used to determine the severity of an impairment at steps 2 and 3 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(4). A claimant is rated in four broad areas. That form has 5 rating options for the first three areas (activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence and pace): none, mild, moderate, marked, and extreme (R. at 523, 585). Dr. Lear found plaintiff extremely limited in 2 of those 3 categories (R. at 614).

Dr. Lear then filled out a mental RFC assessment. This assessment is used at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184 at *4. This assessment rates a claimant in 20 detailed categories, and has 5 rating options: not significantly limited, moderately limited, markedly limited, no evidence of limitation, and not ratable (R. at 527-528, 589-590, 615-616). On that form, Dr. Lear found plaintiff markedly limited in 16 categories and moderately limited in 4 categories (R. at 615-616). As can be seen by evaluating the assessment form, there is no category of "extremely" limited. That category only is on the PRTF form. For this reason, there is no merit to the ALJ's contention that

14

extreme limitations found on the PRTF form do not agree with marked limitations on the more detailed mental RFC assessment.

Fifth, the ALJ discounts the findings of Dr. Lear by noting that he gave plaintiff a GAF of 54[2] in February 2012 (R. at 623), indicating, according to the ALJ, a "significant change" after Dr. Lear's last examination.  The ALJ further asserts that it undermines Dr. Lear's opinion that plaintiff's condition was "largely unchanged" since he first started treatment at COMCARE (R. at 20, 21).  However, the GAF score of 54 given by Dr. Lear in February 2012 is the exact same GAF score Dr. Lear gave plaintiff on the other two occasions he saw the plaintiff, in April 2010 and September 2010 (R. at 571, 598), and is consistent with the GAF score of 51 given by COMCARE when plaintiff was first seen in February 2009 (R. at 464, 467). There was no "significant change" in plaintiff's GAF score from 2009-2010.  The relatively stable GAF score would in fact appear to support Dr. Lear's opinion that plaintiff's condition was relatively unchanged from 2009-2012.

---

[2] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

15

Furthermore, standing alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily evidence whether an impairment seriously interferes with a claimant's ability to work.  See Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).  Because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities.  See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004).  GAF scores are not considered absolute determinants of whether or not a claimant is disabled.  Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

In addition, there is no medical opinion evidence that the GAF scores do not correlate with the opinions of Dr. Lear.  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any medical

16

opinion or other evidence indicating that the GAF scores are inconsistent with the opinions of Dr. Lear, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996); Price v. Colvin, Case No. 13-1055-SAC (D. Kan. March 26, 2014, Doc. 25 at 16-18).

As set forth above, the court found numerous errors in the ALJ's assessment of the opinions from Dr. Lear, plaintiff's treatment provider, who oversaw plaintiff's treatment at COMCARE from 2009-2012. For this reason, the court finds that substantial evidence does not support the ALJ's RFC findings and determination that plaintiff is not disabled; the court will remand this case in order for the ALJ to reevaluate the opinions of Dr. Lear.

**IV. Did the ALJ err in his credibility analysis?**

Plaintiff raises other issues, primarily dealing with the ALJ's credibility analysis. The court will not address these remaining issues in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ properly evaluates the medical opinions of Dr. Lear. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 23rd day of September 2014, Topeka, Kansas.

                                s/Sam A. Crow<u>                    </u>
                                Sam A. Crow, U.S. District Senior Judge